O

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| BILL DERLETH | § | |
| | § | |
| | § | Criminal No. L-03-1745-6 |
| vs. | § | Civil No. L-05-205 |
| | § | |
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |

<u>MEMORANDUM AND ORDER</u>

Pending is Bill Derleth's petition for a writ of coram nobis, filed September 16, 2005. (5:05-cv-205, Docket No. 2). Petitioner has not satisfied the requirements for coram nobis, and his underlying claims themselves lack merit.  He also filed an additional series of motions, which the Court will address in turn.

### Facts and Procedural Background

On June 3, 2004, this Court sentenced Petitioner to fifteen months' confinement and three years of supervised release after he pleaded guilty to a conspiracy to transport illegal aliens. (5:03-cr-1745-6).  Petitioner filed a statement of non-appeal on the same day.  He served the confinement portion of his sentence, and was released from Bureau of Prisons custody approximately July 29, 2005, to begin the supervised release portion.  However,

1

because he is an alien, apparently a citizen of Germany, he began deportation proceedings.

On August 19, 2005, Petitioner filed a habeas claim in the Northern District of Texas.  That court dismissed the case without prejudice, finding that Petitioner was no longer in Bureau of Prisons custody, and that custody was a prerequisite to habeas relief.  (See Civil Case 3:05-cv-01681, Docket No. 2 and No. 3).

On September 16, 2005, Petitioner filed his coram nobis petition in this Court, along with his first motion to stay his deportation proceedings.  The Court denied the motion to stay and directed the Government to respond to the coram nobis petition. The Government argued that Petitioner was not entitled to coram nobis relief and that the Court should not read the petition as a mislabeled request for habeas corpus relief. Petitioner replied on November 29, 2005, stressing that he did not seek habeas relief under § 2255.  He moved for the Court to take judicial notice of supposed constitutional flaws in § 2255, and claimed he had the right to relief under the habeas statute that predated § 2255.  (Docket No. 6).

On May 31, 2006, he filed a "Notice to the Court and Request for An Order of Dismissal" that repeated his initial petition's primary argument.  (Docket No. 7).  He next filed a "Request to

2

correct the record," (Docket No. 8) apparently because he believed the Clerk of Court had not docketed his prior filing (Docket No. 7) on the correct date.  He also moved for a writ of prohibition and made a second motion to stay his deportation proceedings, which the Clerk docketed together under a new case number.  (5:06-mc-3, Docket Nos. 1 and 2).  The motion for a writ of prohibition was directed to the Fifth Circuit Court of Appeals, but Petitioner mailed it to this Court.

<u>Availability of Writ of Coram Nobis</u>

Coram nobis is an extraordinary remedy that may be only awarded to correct errors of the most fundamental nature.  <u>United States v. Dyer</u>, 136 F.3d 417, 422 (5th Cir. 1998) <u>quoting</u> <u>United States v. Morgan</u>, 346 U.S. 502 (1954)(allowing a defendant who claimed he had not had counsel to bring a writ of coram nobis). It is not a substitute for appeal.  <u>Dyer</u>, 136 F.3d at 422. Furthermore, coram nobis is appropriate only when a petitioner has completed a prison sentence and is no longer "in custody" for purposes of § 2241 or § 2255, but suffers "lingering civil disabilities" as a result of his criminal conviction.  <u>Id.</u>  A showing of such disabilities is key to deciding "whether sufficiently 'compelling circumstances' exist" to grant relief. <u>Id.</u>  To be successful, a petitioner must also overcome the strong presumption that previous judicial proceedings were correct, and

3

show that there were sound reasons for failing to seek relief
earlier. Id.

A coram nobis petition is inappropriate because Petitioner
is still under supervised release, and therefore considered to be
in custody. "Custody" can signify incarceration or supervised
release; it "encompasses most restrictions on liberty resulting
from a criminal conviction." Pack v. Yusuff, 218 F.3d 448, 454
n.5 (5th Cir. 2000)(defining "custody" in a habeas case), citing
Jones v. Cunningham, 371 U.S. 236, 241-43 (1963)(finding that a
former prisoner now on parole was still in custody for habeas
purposes).[1]

Even were the Court to treat this coram nobis petition as a
mislabeled habeas motion under § 2255, the motion would fail as
being filed beyond the applicable statute of limitations.
Section 2255 motions are generally subject to a one-year
limitations period from the date the conviction becomes final,
with certain exceptions not pertinent here. Because Petitioner
did not appeal his conviction, the judgment became final on the

---

[1]The Northern District court accepted a Magistrate's finding
that Petitioner was no longer in custody, because he had been
released by the Bureau of Prisons. That court appears to have
ignored the term of supervised release. Petitioner could have,
but apparently did not, appeal that decision. However, the
habeas petition might have had other failings. It appears to
have been filed after § 2255's one-year deadline. Moreover, if
that filing was intended to attack this Court's sentence, this
Division, and not the Northern District, was the proper venue.

date his time to appeal expired.  Petitioner did not file the
present motion until September 16, 2005, after the one year
limitations period.

One exception is when the Supreme Court makes a newly
recognized right retroactively applicable.  Though Petitioner
makes the additional argument that rights recognized in <u>Booker</u>
apply to him, <u>Booker</u> is not retroactive.  <u>See</u> <u>In re Elwood</u>, 408
F.3d 211, 213 (5th Cir. 2005).

### *The Jurisdictional Statute*

Even if the Court could consider the coram nobis or habeas
corpus claims, they would be meritless.  Petitioner's primary
claim is that federal courts do not have jurisdiction over
criminal acts.  It was therefore unconstitutional, he reasons,
for the Court to sentence him for any criminal act (or, as he
puts it, "no law, no crime.") He bases his argument on supposed
procedural flaws in the bill that became the statute authorizing
federal courts to hear criminal cases.[2]  He claims that Public
Law 80-772, ultimately 18 U.S.C. § 3231, failed to pass both the
House and Senate and is therefore unconstitutional.

His argument is as follows: each Congress is generally

---

[2]The relevant portion of the statute reads: "The district courts of the
United States shall have original jurisdiction, exclusive of the courts of the
States, of all offenses against the laws of the United States."  18 U.S.C. §
3231.

composed of two sessions, and Congress adjourns between sessions. The House passed its version of the bill during the first session of the 80th Congress, in 1947.  Both houses of Congress then adjourned for a December recess. The adjournment "killed" the House bill, rendering it null.  After Congress reconvened in January 1948 for its second session, the Senate passed its version of the bill.[3]  Because the House's version of the bill had died, the bill was effectively passed only by the Senate, in violation of the constitutional requirement of bicameralism. Because of this error a series of additional irregularities followed, compounding the resulting statute's supposed constitutional infirmities.

This argument depends on one key premise: that when a house of Congress passes a bill during its first session and then adjourns, the bill is as ineffective as if it had never existed. Petitioner claims that "[a] legislature's failure to act on a pending bill...before the legislature adjourns *sine die*,

---

[3] The 80th Congress had an unusual history, which Petitioner discusses in his reply brief.  By June of 1947, Congress had concluded its business for the first session.  However, in response to a proclamation from President Truman, Congress reconvened for a special session beginning November 17, 1947, and ending December 19, 1947.  See Sessions of Congress, available at www.senate.gov/reference/resources/pdf/congresses2.pdf (last visited January 18, 2006).  The United States Senate describes the additional session as "an extension of the [first] regularly numbered session rather than a separately numbered one."  Id. at n.15.  Truman called a similar extraordinary session in 1948, at the end of the second session of Congress. Id.; see also Kennedy v. Sampson, 511 F.2d 430, 444 Appx. n.5-5 (D.C. Cir. 1974)(listing intra-session adjournments of more than three days from 1789-1974).  However, Petitioner has not shown that the extraordinary sessions had any particular implications for the viability of the bill at issue.

6

effectively kills that bill." (Docket No. 1 at 20, <u>citing</u> 73 Am. Jur. 2d <u>Statutes</u> § 24 (2001)). In other words, "an adjournment *sine die* results in the death of all pending legislation." (Docket No. 1 at 21, <u>citing</u> Floyd Riddick, THE UNITED STATES CONGRESS: ORGANIZATION AND PROCEDURE 56 (1949)). Adjournment "*sine die*", Latin for "without date", means the final adjournment for a session. <u>See</u> <u>R.T. Vanderbilt Co. v. Babbit</u>, 113 F.3d 1061, 1064 n.2 (9th Cir. 1997); <u>Black's Law Dictionary</u> 42 (7th ed. 1999).

The Government, by contrast, argues that a bill introduced in the first session of a Congress remains active until the end of the entire Congress (the second session). Per the Government, a bill introduced in the first session of a Congress remains pending through the end of the second session; "[u]npassed bills do not die of their own accord until the entire Congress comes to a close- that is, when Congress adjourns *sine die*." (Docket No. 4 at 9). Congress only adjourns "*sine die*," argues the Government, at the end of the entire Congress, not after each session. If the 80th Congress "did not adjourn *sine die*...when the first session adjourned," and if bills do not die until *sine die* adjournment, then the version of the bill that the House approved during the first session was still alive when the Senate voted on its version during the second session. Therefore, both houses of Congress voted for the bill.

Petitioner, and not the Government, is generally correct that each session of a Congress may adjourn *sine die*. <u>See</u> <u>The Pocket Veto Case</u> 279 U.S. 655, 672 (1929)(showing that both houses adjourned *sine die* between sessions of the 69th Congress); <u>Barnes v. Kline</u>, 759 F.2d 21, 24(D.C. Cir. 1984)(observing the 98th Congress' *sine die* adjournment between sessions) <u>vacated on other grounds</u> <u>Burke v. Barnes</u>, 479 U.S. 361 (1987). <u>See</u> also Abridged Dictionary of Parliamentary Terms, <u>available</u> <u>at</u> http://www.rules.house.gov/archives/dictionary.htm(explaining that *sine die* usually means adjournment at the end of a *session* of Congress). However, this dispute is secondary to the real point at issue: whether adjournment in between sessions of the same Congress voids all bills passed by one house before the adjournment.

Petitioner primarily relies on two treatises. They offer ambiguous support at best, and are not binding on this Court. <u>See</u> 73 Am. Jur. 2d Statutes § 24 (relying on an Alabama state case stating that *sine die* adjournment kills un-enacted legislation, but without clarifying whether *sine die* indicates the end of a session or the entire legislature); Riddick, *supra* 59(stating that proposed but unenacted legislation dies "when a Congress adjourns its last session *sine die*" without addressing whether Congress can adjourn an *earlier* session *sine die*).

8

Petitioner's other citations are simply off-point.  <u>See</u>, <u>e.g.</u>, <u>The Pocket Veto Case</u>, 279 U.S. at 681(discussing whether a bill approved by both houses during Congress' first session can be returned by the President during the inter-session recess, not whether a bill passed by one house during the first session becomes null during the recess); 20 Op. Off. Legal Counsel 372 (1996)(relying on a prior OLC opinion, itself relying on Riddick, supra, to determine that *sine die* adjournment terminates the power of Congressional subpoenas after a session closes, but not addressing what happens to bills in between sessions).

Petitioner's analysis does not persuade the Court that there is any material flaw in the jurisdictional statute, and additional factors militate strongly against him.  While Congress is bound to follow the Constitution's requirements for passing legislation, e.g., presentment, courts are generally deferential when examining Congress' internal procedures.  <u>See</u>, <u>e.g.</u>, <u>Mester Mfg. Co.</u>, 879 F.2d at 571 (deferring, in the absence of express constitutional direction, to reasonable procedures Congress sets for itself).

Petitioner has not pointed to any constitutional requirement that bills passed by only one house of Congress before an inter-session adjournment of the same Congress be voided.  And while the rules of both the current and the 80th Congresses do not

9

explicitly describe the situation at issue, they suggest that legislative business generally continues between sessions of the same Congress as if no adjournment took place.  See Senate Rule XXXII, S. Doc. No. 80-11, at 44 (1947) and Rules of the House of Representatives Rule XXVI, H.R. Doc. 79-769, at 433 (1947)(referring to unfinished business before committees, but, discussing other business in notes accompanying the rule); for the current rules see Standing Rules of the Senate Rule XVII, *available at* http://rules.senate.gov/senaterules/rule18.php (last visited January 19, 2006) and U.S. House of Representatives Committee on Rules, Rule XI(6), *available at* http://www.rules.house.gov/archives/11RXI.htm (last viewed January 19, 2006).

Lastly, as the Government notes, even if 18 U.S.C. § 3231 was flawed, legislation that pre-dated section § 3231 would have operated to give the Court jurisdiction over federal crimes.

### The *Booker* Claims

Petitioner's additional arguments are unpersuasive.  He claims that his sentence violated his Fifth and Sixth amendment rights, as elaborated in United States v. Booker.  He asserts that he "is actually innocent of the sentence given," which is literal nonsense.  There is no such thing as being innocent of a sentence.  He makes the similarly confusing statement that he was

"convicted of enhanced charges" not in his indictment, because he "was not indicted for [the] three years of tsr [supervised release] and 50 hours of community service" that were included in his sentence.  The function of the indictment is to describe the crime alleged against a defendant, not the possible sentence if convicted.

The exact nature of Petitioner's objection is unclear. He has not argued that he was innocent of violating the alien transporting statute, or that he was sentenced for more time than authorized by that statute. If he believed that the Court based his sentence on an incorrect statute, incorrect findings of fact, or a misapplication of the sentencing guidelines, his remedy would normally be a direct appeal.  Petitioner chose not to appeal his sentence.  (Case No. 5:03-cr-10745, Docket No. 108). Coram nobis is not a substitute for appeal.  Dyer, 136 F.3d at 422.

If Petitioner is instead arguing that under Booker it was incorrect for the Court to apply the sentencing guidelines in his case, his claim also fails.  Petitioner was sentenced on June 3, 2004, prior to the Booker decision in 2005, and did not appeal. Booker is not retroactive.  See In re Elwood, 408 F.3d 211, 213 (5th Cir. 2005).  Petitioner's statement that "retroactivity is not at issue when a statute is redefined" makes little sense and

11

is inapplicable.  His reliance on <u>Bousley v. United States</u>, 523 U.S. 614 (1998), is also misplaced.  <u>Bousley</u> dealt with the retroactive application, to a defendant's benefit, of an interpretation of a statute that defined substantive criminal conduct.  It did not discuss the sentencing guidelines and, even if it had, it pre-dated <u>Booker</u> and <u>Booker</u>'s progeny.

### *Petitioner's other claims*

Petitioner also claims that he received ineffective assistance of counsel in violation of his Sixth Amendment rights. Neither habeas, nor certainly coram nobis, can be used as a substitute for appeal, and Petitioner bears a heavy burden attempting to vacate or reverse his conviction.  Though Petitioner argues that his counsel did not perform an adequate investigation, he does not state what exculpatory evidence further investigation would have yielded, as required by <u>United States v. Green</u>. 882 F.2d 999, 1003 (5th Cir. 1989).

He also alleges that his counsel was deficient for failing to investigate the supposed defect in the jurisdictional statute, and the supposed violations of his rights under <u>Booker</u>.  Counsel was not constitutionally ineffective for failing to pursue meritless claims, because such an investigation would not have helped Petitioner.

Lastly, he alleges that his indictment was defective for listing three charges in one count, and for failing to allege enough details about the conspiracy.  Even if this claim had any merit, a defective indictment cannot be the basis for coram nobis relief.  <u>Campbell v. United States</u>, 538 F.2d 692, 693 (5th Cir. 1976).

### <u>Petitioner's Motion to Take Judicial Notice</u>

Petitioner also moves for the Court to take judicial notice of supposed flaws in the habeas statute.  (Docket No. 6). He claims that § 2255 is unconstitutional, and that he is therefore entitled to bring a habeas action under the prior iteration of the statute, 28 U.S.C. 451, et seq. (1940).  The bill that became § 2255 was apparently approved by the House during the first session of the 80th Congress, in 1947, and the Senate during the second session, in 1948.  He argues that § 2255 has the "same infirmities" that he argued existed in the general federal criminal jurisdictional statute.  But Petitioner again failed to demonstrate that this is a constitutional flaw.  Nor does he address the fact that § 2255 has been re-enacted with amendments since 1948.  Even were the 1948 version unconstitutional, the later version presumably met constitutional requirements.

## Conclusion

Petitioner's claims are barred whether brought in the form of coram nobis or habeas corpus.  His underlying claims themselves lack merit and will be dismissed.  His motion to take judicial notice of supposed defects in the habeas statute (Docket No. 6) turns on the same reasoning as his coram nobis petition and is DENIED.  His subsequent "Notice to the Court and Request for an Order of Dismissal" (Docket No. 7) restates his coram nobis claims and is DENIED.  Because that motion, Docket No. 7, is denied, his motion to correct the record (Docket No. 8) is DENIED as moot.

DONE at Laredo, Texas, this 27th day of June, 2006.

George P. Kazen
United States District Judge

14